**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**


**YILI TSENG,**

     **Plaintiff,**

**vs.**                         **Case No. 4:08cv91-SPM/WCS**

**FLORIDA A&M UNIVERSITY,
and the FLORIDA A&M UNIVERSITY
BOARD OF TRUSTEES,**

     **Defendants.**

_____/


## SECOND REPORT AND RECOMMENDATION

     This employment discrimination case was filed by Plaintiff, *pro se*, on February

27, 2008.  Doc. 1.  Since that time, Defendants' motion to dismiss, doc. 19, was

granted, docs. 29 and 57, and Plaintiff's amendment to the complaint was dismissed.[1]

After discovery closed, Defendants filed a motion for summary judgment, doc. 48,

supported by a statement of material facts, doc. 49.  Plaintiff was advised of his

obligation to respond to the motion, doc. 51, and his response was filed, doc. 60, along

with Plaintiff's statement of facts, doc. 61.

_____

[1] That amendment had sought to add a request for punitive damages, but was
denied because punitive damages may not be obtained from a state agency pursuant to
42 U.S.C. § 1981(b)(1).  *See* docs. 29, 57.

After review of those materials, the parties were directed to supplement the evidence because it appeared from these documents that Plaintiff might not have been "qualified" for the position sought. Doc. 62. That *sua sponte* order led to another brief discovery period, and the parties were given leave to file a supplemental memorandum of law "limited to the issue of whether Plaintiff was qualified pursuant to the University's requirements for a tenured track position." Doc. 66. Defendants filed supplemental materials, doc. 69, and a supplemental memorandum of law, doc. 71, which is erroneously titled on the docket as a "response." Plaintiff also filed a supplemental memorandum. Doc. 72.

**The Complaint, doc. 1**

Plaintiff alleged that Defendants discriminated against him on the basis of his national origin when Plaintiff was not hired for a tenured position at Florida A & M University (hereinafter FAMU). Doc. 1, pp. 3, 5-6. Plaintiff is a citizen of Taiwan and contends he had the "required English fluency to teach in a university" and sought employment in the Department of Computer and Information Sciences (hereinafter CIS). *Id.*, at 5. Plaintiff alleges that Dr. Hongmei Chi, who is Chinese, was offered the position instead of him. *Id.*, at 6.

Plaintiff filed a charge of discrimination jointly with the Florida Commission on Human Relations (FCHR) and the Equal Employment Opportunity Commission (EEOC) alleging that FAMU discriminated against him due to his national origin, Taiwanese, in July of 2006 when Plaintiff "applied for a tenure track professor position."[2] Doc. 1, p. 9.

---

[2] Thus, the only job opportunity at issue here is the 2006 selection of Dr. Chi over Plaintiff.

Plaintiff claimed he had better qualifications than Dr. Chi, a Chinese female, who was hired instead of Plaintiff. *Id.* The EEOC issued Plaintiff a notice of right to sue letter on or about November 27, 2007, doc. 1, p. 10, which was received by Plaintiff on November 30, 2007. *Id.*, at 12. This case was initiated on February 27, 2008.

**Motion for summary judgment, doc. 48**

Defendants contend that "Plaintiff's claim of national origin discrimination is completely unfounded." Doc. 48, p. 5. Defendants also argue that Plaintiff has no evidence of any unlawful bias against him by "any person at all with the ability to have affected" the decision to hire Dr. Chi. *Id.*, at 6, 7. Defendants assert that the panel which made the hiring decision ranked Dr. Chi "higher than Plaintiff." *Id.*, at 6. Defendants argue that even if Chi's lower salary costs, or the fact that she and the Department Chair wrote articles together for professional publications, played a part in the decision to hire Chi, these considerations have nothing to do with Plaintiff's national origin. *Id.*, at 7. Defendants contend that Dr. Chi was hired because she "collaborated with other faculty members better" and had "better English skills." *Id.*, at 7-8.

**Legal standards governing a motion for summary judgment**

On a motion for summary judgment Defendants initially have the burden to demonstrate an absence of evidence to support the nonmoving party's case. Celotex Corporation v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2553-54, 91 L. Ed. 2d 265 (1986). If they do so, the burden shifts to Plaintiff to come forward with evidentiary material demonstrating a genuine issue of material fact for trial. *Id.* An issue of fact is "material" if it could affect the outcome of the case. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted). Plaintiff

must show more than the existence of a "metaphysical doubt" regarding the material facts, <u>Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation</u>, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is insufficient.  The court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." <u>Hickson Corp.</u>, 357 F.3d at 1260, *quoting* <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202 (1986).  All reasonable inferences must be resolved in the light most favorable to the nonmoving party. <u>Watkins v. Ford Motor Co.</u>, 190 F.3d 1213, 1216 (11th Cir. 1999).

"Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " <u>Owen v. Wille</u>, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998), *quoting* <u>Celotex</u>, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(c), (e)).  The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c). <u>Owen v. Wille</u>, 117 F.3d at 1236; <u>Celotex</u>, 477 U.S. at 324, 106 S. Ct. at 2553.

**The relevant Rule 56(e) evidence**

Plaintiff was employed by FAMU in August of 2001 as a "visiting" professor.  Doc. 49, p. 1; Plaintiff's deposition, p. 10 (doc. 48-4, p. 19); Plaintiff's deposition, p. 51 (doc.

48-4, p. 101).[3] Plaintiff was provided an annual contract for nine months of employment during his employment with FAMU. Plaintiff's deposition, p. 52 (doc. 48-4, p. 103). As each contact expired, FAMU could choose to continue with Plaintiff's employment for another year or not issue a new contract. Plaintiff's deposition, p. 52 (doc. 48-4, p. 103). Faculty hired with "visiting contracts" have "no expectation that employment will be extended beyond the ending date of the contract." Plaintiff's Ex. 12 (doc. 60-3, p. 7). Pursuant to University policy, "visiting contracts" could only be renewed only "for a maximum of four years." Plaintiff's deposition, pp. 107-108 (doc. 48-5, pp. 43, 45); Plaintiff's Ex. 10 (doc. 60-2, p. 80). Plaintiff's employment with FAMU ended on May 6, 2005. Doc. 49, p. 1; Plaintiff's deposition, p. 11 (doc. 48-4, p. 21); Plaintiff's Ex. 12 (doc. 60-3, p. 7).

There is some dispute, however, as to whether this was a firm policy. In the supplemental evidence submitted by Defendants, it appears that some employees could be repeatedly hired for a maximum of six years. Defendant's Supp. (Doc. 69-4, p. 1; doc. 69-3, p. 1). It is unclear whether this provision is applicable for a "visiting professor" or some other type of "temporary" position as the policy falls within the Revised Guidelines for H-1B Visa Petition. Defendant's Supp. (Doc. 69-4, p. 1). Pursuant to those Guidelines, which were in effect as of August of 2004 (during the relevant period of Plaintiff's contract renewal), foreign nationals with an H1-B visa could be employed in specialty occupations (such as computer science), and could fill a

---

[3] All references to exhibits are first designated by the electronic docket reference, followed in parenthesis by reference to the paper copy, page number, and title as may be appropriate. Both citations are referenced as a pro se litigant will not have access to the court's electronic docket, but only upon the first occurrence of that reference.

position on a temporary basis for up to six years. Defendant's Supp. (Doc. 69-4, p. 1; doc. 69-3, p. 1). Under the policy then, the University could hire a qualified person in a specialty occupation, which Plaintiff occupied, but even though the "position may be a permanent one, the prospective employee under H-1B visa must be filling it temporarily, meaning for a period of up to a maximum of six years." Defendant's Supp. (Doc. 69-4, p. 1). This dispute, however, is not one of material fact since the cessation of Plaintiff's employment in 2005 is not an issue in this case.

Another matter that is unclear is that the policy provides that "[t]enure-track and tenured faculty may be accorded H-1B status" yet it also simultaneously states "H-1B status is for temporary workers." *Id.* This evidence indicates that a foreign national such as Plaintiff *could* have been hired into a tenure track position as it was not precluded by University policy. Ultimately, this is not a dispute of material fact either.

In 2005, Plaintiff's salary was approximately $68,000 per year while Dr. Chi's salary was approximately $55,000.00. Doc. 49, p. 2; Plaintiff's deposition, pp. 29-30 (doc. 48-4, pp. 58-59). At one time Plaintiff suspected[4] that salary played a significant role in the decision to hire Dr. Chi in 2006, although there is no evidence to support that suspicion. Plaintiff's deposition, pp. 28-29; 126-127 (doc. 48-4, pp. 55, 57; doc. 48-5, pp. 81-83). The salary for the tenure-track position 19033000 was advertised at $65,000, however. Plaintiff's Ex. 26 (doc. 60-4, p. 9). The position had been "held by another Visiting Assistant Professor who earned $68,661." *Id.*

---

[4] Plaintiff's initial suspicion was that Dr. Chi was hired instead of him because of the salary difference and not due to discrimination. Plaintiff's deposition, pp. 129, 173 (doc. 48-5, pp. 87, 175).

Plaintiff's resume and employment application for position 1903300, assistant professor, submitted on or about April 21, 2006, reveals that Plaintiff earned his Bachelor's Degree in Taiwan in 1985. Plaintiff's resume, Defendants' Ex. 3 (doc. 48-6, pp. 2, 4). He earned a Masters of Science degree in Engineering Science from the University of Florida in 1990. *Id.*, at 2. Between August, 1990 through December of 2000, Plaintiff earned another Masters of Science degree and his Ph.D. in Computer Engineering from the University of Central Florida. *Id.* Plaintiff's cover letter attached to the application states:

> In addition to teaching, I am interested in research as well. Definitely I will write for grants to support my research. Despite the heavy teaching load, I still published two papers on internationally recognized journals and one paper at ICPADS'02, and submitted to papers to different journals in the past three years.

Defendants' Ex. 3 (doc. 48-6, p. 5). Plaintiff's resume stated that Plaintiff had taught two graduate courses and eight undergraduate courses at FAMU. Defendants' Ex. 3 (doc. 48-6, p. 6). Plaintiff listed two years of having been a research assistant, and showed five publications (not including the dissertation), two of which were listed as submitted. Defendants' Ex. 3 (doc. 48-6, p. 7).

Dr. Chi's application is also in evidence. Defendants' Ex. 3 (doc. 48-6, pp. 13-19). Dr. Chi earned a Bachelor of Science degree in Statistics from Nankai University, a Master of Science degree in Computer Science from Dalian University of Technology, a Master of Science degree in Statistics from the University of Louisiana at Lafayette, and earned her Ph.D. in Computer Science from Florida State University in 2004. Defendants' Ex. 3 (doc. 48-6, p. 18). Dr. Chi listed six years as a research assistant at Florida State University, and another year as a research assistant at the University of

Louisiana at Lafayette. *Id.* Dr. Chi also taught various semesters at Florida State University between Fall of 1998 and Spring, 2004, and taught courses in the computer science department for four years at the Beijing University of Chemical and Technology. Plaintiff's Ex. 44 (doc. 60-5, p. 18). Dr. Chi lists sixteen publications, three of which were shown as "submitted," and several appear to be conference publications. Defendants' Ex. 3 (doc. 48-6, p. 19). All of those publications are collaborations between Dr. Chi and other persons. *Id.*

The process of selecting a professor at FAMU is that a committee reviews applications, conducts interviews, and then makes a recommendation. Doc. 49, p. 2; Plaintiff's deposition, pp. 30-32 (doc. 48-4, pp. 59-63). The Department Chair reviews the recommendation, which is either approved or rejected, but the Chair is not able to substitute or recommend another person. Doc. 49, p. 2; Plaintiff's deposition, pp. 30-32, 38-39 (doc. 48-4, pp. 59-63, 75-77). The Chair makes a recommendation to the Dean, who then presents the recommendation to the Provost. Doc. 49, p. 2; Plaintiff's deposition, pp. 30-32 (doc. 48-4, pp. 59-63).

Four faculty positions were advertised for 2005 at FAMU within the CIS Department. Plaintiff's Ex. 18 (doc. 60-3, p. 24). The Committee in 2005 was comprised of Clement Allen, Marion Harmon, Deidre Evans, Ken Riggs, and Malcolm Barnes. Plaintiff's Ex. 18 (doc. 60-3, p. 23). Plaintiff and others applied, but following the interview process in 2005, no one was hired for the positions.[5] Doc. 49, p. 2; Plaintiff's deposition, p. 35 (doc. 48-4, p. 69); Plaintiff's Ex. 10 (doc. 60-2, p. 83).

---

[5] As noted previously, the 2005 position was not alleged in the charge of discrimination to the EEOC and is not at issue in this case. *See* n.2.

Although the positions were not filled, Dr. Chi was ranked higher than Plaintiff. Doc. 49, p. 2; Plaintiff's deposition, p. 35 (doc. 48-4, p. 69). Plaintiff was ranked "second of eight people behind Dr. Chi." Plaintiff's deposition, pp. 35, 36 (doc. 48-4, pp. 69-71); Plaintiff's Ex. 24 (doc. 60-4, p. 6). Dr. Chi was recommended by the search committee for the position, but the recommendation was not approved by the Dean. Plaintiff's deposition, p. 35 (doc. 48-4, p. 69); Plaintiff's Ex. 10 (doc. 60-2, p. 83). The advertised positions remained vacant during the 2005-2006 academic year. Plaintiff's Ex. 10 (doc. 60-2, p. 83).

On November 21, 2005, Dr. Jones wrote a letter to Dr. Greenleaf, the Human Resources Administrator at FAMU. Plaintiff's Ex. 26 (doc. 60-4, p. 9). The letter sought to justify Dr. Chi's salary for position 19033000. *Id.* Dr. Jones explained that Dr. Chi was recommended at that time for the position at the advertised salary of $65,000 per year, and said that the salary "reflected Dr. Chi's qualifications and were comparable to those of the visiting faculty member previously in position 19033000." *Id.*

Plaintiff presented evidence that after the recommendation was made to hire Dr. Chi in 2005, "the University issued a directive that tenure track appointments would no longer be made to persons who are not U.S. citizens or permanent residents." Plaintiff's Ex. 26 (doc. 60-4, p. 9). That evidence comes from a letter written by Dr. Jones, Chairman, to Dr. Greenleaf, the Human Resources Administrator. *Id.* The letter states that because of that "directive, the CIS Department revised the recommendation, but

only to the extent of changing the appointment status from Tenure-Earning to Visiting" Professor.[6]  Plaintiff's Ex. 26 (doc. 60-4, p. 9).

Plaintiff did not apply for permanent residency in the United States until June of 2006.  Plaintiff's deposition, p. 229 (doc. 48-5, p. 287).  Plaintiff received permanent residency in March of 2008.  *Id.*

Position 19033000 became available for the 2006 year, the one at issue in this case.  The process was the same, although Plaintiff was not interviewed for the position and he received a lower ranking than in the previous year.  Plaintiff's deposition, p. 93 (doc. 48-5, p. 15).  The committee in 2006 was comprised of Bobby Granville, Ken Riggs, Clement Allen, Christy Chatmon, and Richard Marcus.  Plaintiff's Ex. 18 (doc. 60-3, p. 18).  Professors Riggs and Allen were the only two members of the committee who also served on the 2005 selection committee.  *Id.*  Only the top five ranked candidates were interviewed for the position, and Plaintiff was not interviewed.  Plaintiff's Ex. 10, p. 6 (doc. 60-2, p. 84).   As noted above, in the prior 2005 hiring year, Dr. Chi was ranked first, and Plaintiff was ranked second.  Plaintiff's deposition, p. 93 (doc. 48-5, p. 15).  After the review process for the 2006 position concluded, Dr. Chi was offered the job at the salary rate of $60,000.00, to be employed from August, 2006, through May, 2007.  Plaintiff's Ex. 7 (doc. 60-2, p. 7).  The faculty employment contract for position 19033000 indicates it was for a non-tenure earning position, and appointment status was listed as "regular."  *Id.*

A memorandum was issued on Friday, July 7, 2006, from Ken Riggs and Clement Allen, to Dr. Jones, Chair, recommending that Dr. Chi be "offered the position

_____

[6] It was that evidence that led to the supplemental discovery period.  Doc. 62.

of Assistant Professor of CIS," which was listed on the memorandum as position 17663. Plaintiff's Ex. 19 (doc. 60-3, p. 26).[7]  The formal Recommendation for Faculty Employment was dated July 3, 2006, and references position 19033000 with Dr. Hongmei Chi as the named employee.  Plaintiffs' Ex. 20 (doc. 60-4, p.1).  The recommendation lists the appointment type as "regular," and shows the rank as "Asst. Professor" "not eligible for Tenure."  *Id.*  The period of employment was from August 8, 2006, through May 7, 2007.  *Id.*  Dr. Edward Jones signed the recommendation as Area Chairperson on July 3, 2006, and it was signed by Henry Williams, Division Director, on August 3, 2006.  *Id.*

Plaintiff submitted a copy of the letter written by Dr. Jones to Interim Dean Ralph Turner, for the College of Arts & Sciences, which was dated, July 3, 2006.  Plaintiff's Ex. 21 (doc. 60-4, p. 2).  The letter indicates, contrary to the Recommendation for Faculty Employment, that Dr. Chi was being recommended "for a tenure-track appointment to position 19033000 at the rank of Assistant Professor at the 9-month salary of $65,000, to begin August 7, 2006."  *Id.*  Dr. Jones recommended "that Dr. Chi be awarded one year towards tenure, based on her performance as a visiting faculty[8] in the department."  *Id.*  The letter ended by noting that "Dr. Chi's background in mathematics, statistics bioinformatics, and computer simulation will complement existing faculty strengths."  *Id.*

---

[7] The document recommended that Fenglien Lee be offered an associate professor position 19033000.  Based on other evidence presented, this position number appears to be a mistake as the contract offered shows position number 19033000 instead.  *Cf.* Plaintiff's Ex. 7 (doc. 60-1) and Plaintiff's Ex. 20 (doc. 60-4, p. 1).

[8] Dr. Chi was a "Visiting Assistant Professor for the 2004-2006 academic years . . . ."  Plaintiff's Ex. 21 (doc. 60-4, p. 2).  The letter noted that during that time, her research efforts "intersected those of other CIS faculty members and has resulted in over a dozen publications and three research proposals."  *Id.*

Edward L. Jones, the Chair of CIS, submitted an affidavit in support of the summary judgment motion. Mr. Jones has served as Chair of the Department since August, 2001, and been employed by the University as an Associate Professor since 1998. Doc. 48-2, p. 1 (hereafter "Jones Affidavit"). In both 2005 and 2006, recommendations were provided from a search committee to Mr. Jones for a tenure track position as either an Assistant or Associate Professor in the CIS Department. Jones Affidavit, p. 1. Plaintiff was one of the applicants considered by the Search Committee. *Id.* Mr. Jones agreed with the recommendation of Dr. Chi for the 2006 position based on her qualifications. *Id.* Dr. Jones testified that at "no time" during the hiring process was he "motivated by the national origin of [Plaintiff], or any other applicant for the position." *Id.*; *see also* Plaintiff's Ex. 22 (doc. 60-4, p. 3).

Bobby Granville, an Associate Professor in the CIS Department, served on the Search Committee in 2006, the year at issue in this case. Doc. 48-3, p. 1 (hereafter "Granville Affidavit"). He acknowledges that Plaintiff was an applicant considered in the process of selecting a tenured professor. *Id.* Professor Granville avers that his decision as to who the committee should recommend was not motivated by Plaintiff's national origin, nor was any other applicant's national origin a consideration. *Id.* There was never any "discussion of national origin during the course of the deliberations and discussions of the search committee." *Id.* Dr. Chi was recommended for the position based upon her qualifications. *Id.*

Defendants have pointed to statements made in Plaintiff's deposition that Plaintiff is unable to identify anyone involved in the selection process who had discriminatory motives or a bias. Doc. 49, p. 2; Plaintiff's deposition, pp. 32, 39 (doc. 48-4, pp. 63, 77).

Plaintiff did not articulate any reason to believe the Provost, Dr. Debra Austin, was biased against him due to his national origin.  Doc. 49, p. 2; Plaintiff's deposition, p. 38 (doc. 48-4, p. 75).  When Plaintiff was specifically asked in his deposition what information he had that would lead him to believe Provost Austin was motivated by his national origin, Plaintiff could not present any.  Plaintiff's deposition, pp. 37-38 (doc. 48-4, pp. 73-75).  Plaintiff only mentioned that in December of 2005, the Provost explained to him why he was not selected for the position and, while doing so, "reminded" Plaintiff that he might "be in violation of the immigration law."[9]  Plaintiff's deposition, p. 34 (doc. 48-4, p. 67).  Plaintiff said the Provost mentioned his "working visa"[10] to him and contends the provost made the statement because of his national origin.  *Id.*  Plaintiff said that he would not have an immigration problem if he were an American citizen and

---

[9] In a letter to the Provost dated October 31, 2005, Plaintiff explained that he was holding "a temporary worker visa which strictly requires the holder to file the change of status application before the current one expires."  Defendant's Ex. P (doc. 48-10, p. 14).  Plaintiff complained that because the University only notified him "8 business days before the new semester began," he did not have a chance to "acquire another job."  *Id.*

[10] Provost Austin to Plaintiff responded to Plaintiff's requested review of the decision not to hire him for the tenure track position in 2005 in a letter dated December 20, 2005.  Defendant's Ex. T (doc. 48-10, pp. 35-36).  The Provost explained that although Plaintiff's "application was quite impressive," the committee recommended "Dr. Hongmei Chi, as it deemed that she was best suited for the job."  *Id.*  The letter explained the faculty collective bargaining agreement which limits a visiting appointment to not "exceed a total of four (4) consecutive years."  *Id.*  The letter ended with the following paragraph:

> You should be aware that the University's Office of International Programs informed me that you may be in violation of the requirements of your visa because you are no longer employed by Florida A&M University, yet you remain in the United States under your HB-1 visa that was procured through the University.

Defendant's Ex. T (doc. 48-10, p. 36).

by the Provost mentioning it to him, it shows "she knew about [his] national origin." Plaintiff's deposition, p. 34 (doc. 48-4, p. 67).

During his deposition, Plaintiff also could not identify any person on the faculty search committee who was biased against him because of his national origin. Plaintiff's deposition, p. 39 (doc. 48-4, p. 77). Plaintiff could point to no one who Plaintiff believed was biased against him because he was from Taiwan. Plaintiff's deposition, p. 187 (doc. 48-5, p. 203). Plaintiff stated only that he believed that because FAMU had hired "an unqualified African-American in 2002, then they hired an Indian in 2003, then . . . they hired a Chinese in 2006," he deduced that it must be because "they don't like Taiwanese." Plaintiff's deposition, p. 40 (doc. 48-4, p. 79).

In his deposition, Plaintiff could not point to any evidence that Dr. Jones was biased against Plaintiff either because he is Taiwanese. Plaintiff's deposition, pp. 58-59 (doc. 48-4, pp. 115-117). Plaintiff indicated he never heard Dr. Jones make any comments concerning his national origin, but said that Dr. Jones had spoken to him about his English, which Plaintiff believes is the equivalent of discriminating against him based on his national origin. Plaintiff's deposition, pp. 58-59 (doc. 48-4, pp. 115-117). During Plaintiff's evaluation, Dr. Jones told Plaintiff that his English was occasionally difficult to understand. Doc. 49, p. 3; Plaintiff's deposition, pp. 59-60, 66-68 (doc. 48-4, pp. 117-119, 131-135). On Plaintiff's Teacher Evaluation Form following the Spring, 2004 semester, Dr. Jones noted: "Language is a challenge – needs to speak more slowly. Compensates by preparing clear slides. Instructor will work on slowing down his speech." Plaintiff's Ex. 11 (doc. 60-3, p. 1). On the April 4, 2005, annual evaluation, Dr. Jones indicated: "Language is a challenge. Improvement in speed and articulation

since last evaluation; good notes compensate." Plaintiff's Ex. 11 (doc. 60-3, p. 4).

Plaintiff considers the remarks by Dr. Jones to be "picking on" him. Doc. 49, p. 3;

Plaintiff's deposition, pp. 59-60, 66-68 (doc. 48-4, pp. 117-119, 131-135). Plaintiff

acknowledged, however, that he was rehired by Dr. Jones in 2002, 2003, and 2004, and

Dr. Jones knew during those years that Plaintiff was Taiwanese. Plaintiff's deposition,

p. 77 (doc. 48-4, p. 153).

Plaintiff testified in his deposition that he had no direct evidence of discrimination

and no information he could point to that would explain a bias against him and in favor

of Dr. Chi. Plaintiff's deposition, pp. 44, 77-78 (doc. 48-4, pp. 87, 153-155). Plaintiff

testified he would prove discrimination through indirect evidence. Plaintiff's deposition,

p. 78 (doc. 48-4, p. 155). Plaintiff disputed the three reasons given by FAMU and

believed that his teaching performance was better than Dr. Chi's, and thought that was

what FAMU meant in saying that she worked well with other faculty. Plaintiff's

deposition, pp. 78-79 (doc. 48-4, pp. 155-157). Plaintiff also believed Dr. Chi's English

was worse than his. Plaintiff's deposition, p. 82 (doc. 48-4, p. 163). When asked

whether her spoken English or written English, or both, were better, Plaintiff answered:

> Okay, this – okay, I believe, okay, her written English, okay is worse than
> mine, but spoken English, it depends on who is there listening. I mean,
> because, okay, most of the people in Florida, they use the southern
> accent, and I don't know if they are used, okay, to the accent of Dr. Chi.
> So I really cannot comment on that part.

Plaintiff's deposition, p. 82 (doc. 48-4, p. 163).

Defendants have presented as evidence a memorandum issued to Provost

Austin from Dr. Edward L. Jones, Chairman. Doc. 48-6, p. 23. The memo was dated

June 22, 2006, and verifies that Dr. Jones had evaluated Dr. Hongmei Chi's "ability to

speak the English language," and Dr. Jones reported being "satisfied with her proficiency in this area." *Id.*

Plaintiff contends in his statement of facts that "Edward Jones and possibly Clement Allen have discriminatory motives" based on the fact that both persons made comments about Plaintiff's speech.  Doc. 61, p. 6.  Plaintiff states in his affidavit that a member of the faculty search committee, Clement Allen, invited Plaintiff to his office for a talk.  Plaintiff's affidavit, Ex. 1 (doc. 61, p. 12).  Allen advised Plaintiff that he should "improve" his English and "should not please students by giving easy grades."  Plaintiff's affidavit, Ex. 1 (doc. 61, p. 12).  Plaintiff reported that the conversation occurred shortly after June 19, 2003, when Plaintiff had a grade change request denied.  Plaintiff's affidavit, Ex. 1 (doc. 61, p. 12).

Plaintiff acknowledges that his English is sometimes difficult to understand.  Doc. 49, p. 3; Plaintiff's deposition, p. 59 (doc. 48-4, p. 117).  However, Plaintiff feels that he is only hard to understand when he is "irritated."  Doc. 61, p. 8; Plaintiff's deposition, pp. 66-67 (doc. 48-4, pp. 131-133).  Plaintiff does not, in general, agree that he is difficult to understand when speaking English.  Doc. 61, pp. 4-5, 8-9.

Plaintiff has submitted the Investigative Memorandum, dated January 17, 2007, by the Florida Commission on Human Relations.  Plaintiff's Ex. 10 (doc. 60-2, p. 79). The investigation concerned Plaintiff's allegation against FAMU that he "was repeatedly denied a permanent position because of his national origin (Taiwanese)."  *Id.*  Although hearsay, the memorandum indicated that Dr. Ken Riggs, an Associate Professor, had reported to Plaintiff "that during a faculty search committee meeting, Dr. Jones indicated

that [Plaintiff] would have to work on his English." Plaintiff's Ex. 10, p. 3 (doc. 60-2, p. 81).[11]

Plaintiff acknowledged in his deposition that others have also told him he was sometimes difficult to understand. Plaintiff's deposition, p. 67 (doc. 48-4, p. 133). However, Plaintiff explained that when people mention they have difficulty understanding him, such as the FCHR investigator, it must be "her prejudice." Plaintiff's deposition, p. 67 (doc. 48-4, p. 133). Plaintiff's opinion, however, is that his English was better than Dr. Chi's English. Plaintiff's deposition, p. 82 (doc. 48-4, p. 163). Further, he explains that when he is nervous or irritated, he tends to speak fast, but states his personal belief that he is not difficult to understand. Plaintiff's deposition, p. 67 (doc. 48-4, p. 133).

> Q:    Do you think that she was lying when she said that, the investigator at the FCHR?
>
> A:    More or less.
>
> Q:    What motive would she have to lie?
>
> A:    Maybe she was not lying, but, okay, I can say, okay, that's her prejudice. And, again, I was nervous when she interview me. So sometimes, okay, under the same circumstance, as far as, okay, irritate by the one who question me, and I tend, okay, to speak, okay, or first, okay, try to explain the thing. So that's how I, okay, speak fast.

Plaintiff's deposition, p. 67 (doc. 48-4, p. 133).

In addition to knowing Dr. Chi was ranked higher than Plaintiff, Plaintiff was also aware that she had published and co-authored articles with Dr. Jones, the Department Chair. Doc. 49, p. 3; Plaintiff's deposition, pp. 54, 56 (doc. 48-4, p. 107). Plaintiff

---

[11] There is no indication as to when this statement was made, but Plaintiff's evidence has been noted.

believes, in part, that Dr. Chi was selected over Plaintiff because Dr. Jones could take

credit for publications even though he did not work on them. Plaintiff's deposition, pp.

54, 46 (doc. 48-4, pp. 107, 111). Plaintiff testified that Dr. Chi published substantially

more publications than he had published. Plaintiff's deposition, p. 49 (doc. 48-4, p. 97).

Plaintiff also acknowledges that Dr. Chi collaborated with other faculty members

more than Plaintiff and admits he did not collaborate with others. Doc. 49, p. 3;

Plaintiff's deposition, pp. 50, 80-81, 90 (doc. 48-4, p. 99, 159-161, doc. 48-5, p. 9).

Plaintiff believes that the search committee should have put more weight and value on

the fact that Plaintiff was nominated, although not awarded, the Teacher of the Year

award. Plaintiff's deposition, p. 74 (doc. 48-4, p. 147).

Plaintiff stated in his deposition that he believes he is "better qualified than all

those candidates selected by FAMU" and that he is more dedicated to the University.

Plaintiff's deposition, pp. 44, 70, 105 (doc. 48-4, pp. 87, 138; doc. 48-5, p. 39). Plaintiff

also believes he is more qualified because he had more teaching experience; Plaintiff

taught at FAMU for three and a half years, while Dr. Chi had only taught (at FAMU) for

one and a half years. Plaintiff's deposition, pp. 38-39; 111-112 (doc. 48-4, pp. 89-91;

doc. 48-5, pp. 51-53). Plaintiff acknowledges he is unaware of Dr. Chi's work

experience prior to working at FAMU. Plaintiff's deposition, p. 46 (doc. 48-4, p. 91).

Plaintiff has suggested[12] that Edward Jones did not simply approve a

recommendation from the search committee in 2006, because Plaintiff notes that Jones

signed the recommendation on July 3, 2006, which Plaintiff contends was four days

---

[12] Plaintiff suggests that alterations were made to Dr. Chi's resume in 2006 and to
Plaintiff's resume in 2005. Doc. 61, p. 3. Plaintiff provides no basis for his statements,
and these assumptions are not evidence properly considered.

prior to the committee making the recommendation. Doc. 61, p. 2; Plaintiff's exhibits 19, 20, and 21 (doc. 60-3, p. 26; doc. 60-4, pp. 1, 2). Plaintiff also notes that he had been nominated by students for the Teacher of the Year Award in 2002, and that several students he had directed had won awards at major competitions. Doc. 61, p. 4. Plaintiff contends that those facts support a finding that his "language did not affect his teaching performance at all." *Id.*

While Plaintiff was a visiting professor at FAMU, he was recommended as Teacher of the Year by Dr. Ken Riggs, an Assistant Professor in the Department of Computer and Information Sciences [CIS]. Defendant's Ex. K (doc. 48-8, p. 18). Defendant also presented a "letter of support" for Plaintiff, written by Dr. Edward Jones, the CIS Chairman, on February 14, 2003. Defendant's Ex. J (doc. 48-8, p. 17). The letter states that Dr. Jones was impressed by Plaintiff's interaction with students, his character, and was, in general, a positive letter recommending Plaintiff. *Id.* The letter closes with the following:

> Of all the qualities that make a teacher, Dr. Tseng's greatest strength is his character. He engenders the trust of students, providing an environment where learning can occur. He has also shown the willingness to learn the craft of teaching by responding to input from other faculty members. I am hopeful that Dr. Tseng will be a contributing member of the CIS faculty for many years to come.

Defendant's Ex. J (doc. 48-8, p. 17). Defendants have also presented other letters in support of Plaintiff's application for a faculty position at other universities. One letter was written by Dr. Usha Chandra, an Associate Professor in the CIS Department at FAMU. Defendant's Ex. M (doc. 48-8, p. 20). That letter was written in September of 2004, and states that Plaintiff would "make an excellent faculty member and [would]

contribute greatly to" the department. *Id.* Similarly, a letter from Dr. Prasad, an

Assistant Professor, was also presented in support of Plaintiff's application for a faculty

position. Defendant's Ex. M (doc. 48-8, p. 21). Further, a letter in support of Plaintiff by

Dr. Ken Riggs was provided. *Id.*, at 22. Dr. Riggs states that he "had intended" that

Plaintiff "would be staying" at FAMU, but Dr. Riggs provides an enthusiastic

recommendation and describes him as "an asset to the department." *Id.* Dr. Riggs

closes by noting that Plaintiff's departure from FAMU was their "misfortune." *Id.*

     As mentioned above, Plaintiff previously filed a complaint with the EEOC and

Florida Commission on Human Relations alleging that FAMU discriminated against him

and that "he was repeatedly denied a permanent position because of his national origin

(Taiwanese)." Plaintiff's Ex. 10 (doc. 60-2, p. 79). The evidence Plaintiff submitted in

this case, which was part of that prior investigation, shows Plaintiff applied for

permanent positions with FAMU in 2001 and 2003, but was not selected. Plaintiff's Ex.

10 (doc. 60-2, p. 80). It appears from that Investigation that in 2003, Dr. Jones had told

Plaintiff "he needed to improve his English speaking." Plaintiff's Ex. 10 (doc. 60-2, p.

81).

     The investigation also noted that when Plaintiff and Dr. Chi both applied for a

position in 2005, Plaintiff had more experience teaching at FAMU, and had "experience

teaching graduate students." Plaintiff's Ex. 10 (doc. 60-2, pp. 81-82). "Dr. Chi's

teaching evaluations from students were better than" Plaintiff's and she "had the highest

evaluations in the department." Plaintiff's Ex. 10 (doc. 60-2, p. 82). As part of that

investigation, Dr. Jones submitted an affidavit which was quoted in the Investigative

memorandum. Plaintiff's Ex. 10 (doc. 60-2, p. 81). There, Dr. Jones stated, "Chi's

communication skills surpassed those of [Plaintiff].  It is important that our faculty have a

command of spoken English, especially in technical fields."  Plaintiff's Ex. 10 (doc. 60-2,

p. 82).  Furthermore, when responding to Plaintiff's complaint of discrimination, the

University answered:

> Communication was an issue that called for improvement and was discussed
> with [Plaintiff] during his evaluations.  The University decided to give [Plaintiff] an
> opportunity to improve his communication skills by continuing to offer a visiting
> position; however, [Plaintiff's] communication skills did not improve.

Plaintiff's Ex. 10 (doc. 60-2, p. 84).  The result of that Florida Commission on Human

Relations investigation was a finding that there was not "reasonable cause to believe

that [FAMU] unlawfully discriminated against [Plaintiff] because of his national origin."

Plaintiff's Ex. 10 (doc. 60-2, p. 87).

As additional evidence, Plaintiff presented a page from the website of the Equal

Employment Opportunity Commission.  Plaintiff's Ex. 14 (doc. 60-3, p. 11).  That page

explains that it is discriminatory under Title VII for an employer to base an employment

decision such as hiring or firing "on an employee's foreign accent unless the accent

materially interferes with job performance."  *Id.*; *see also* (doc. 60-3, p. 13).  In

discussing "accent discrimination," the webpage noted the following:

> An employment decision based on foreign accent does not violated Title
> VII if an individual's accent materially interferes with the ability to perform
> job duties.  This assessment depends upon the specific duties of the
> position in question and the extent to which the individual's accent affects
> his or her ability to perform job duties.  Employers should distinguish
> between a merely discernible foreign accent and one that interferes with
> communication skills necessary to perform job duties.  Generally, an
> employer may only base an employment decision on accent if effective
> oral communication in English is required to perform job duties and the
> individual's foreign accent materially interferes with his or her ability to
> communicate orally in English.  Positions for which effective oral
> communication in English may be required include teaching, customer

> service, and telemarketing. Even for these positions, an employer must
> still determine whether the particular individual's accent interferes with the
> ability to perform job duties.

Plaintiff's Ex. 14 (doc. 60-3, p. 13). Plaintiff has also presented as evidence a

memorandum from the General Counsel's office for FAMU explaining that

"[c]ommunication was an issue that called for improvement and was discussed with

[Plaintiff] during his evaluations." Plaintiff's Ex. 18 (doc. 60-3, p. 24). "The University

decided to give [Plaintiff] an opportunity to improve his communication skills by

continuing to offer a visiting position; however, [Plaintiff's] communication skills did not

improve." *Id.*

**Legal Analysis**

Title VII of the Civil Rights Act of 1964 forbids discrimination in employment

based on an individual's "race, color, religion, sex, or national origin." 42 U.S.C. §

2000e-2(a). Plaintiff has the burden of establishing a *prima facie* case of intentional

discrimination or disparate treatment. Plaintiff may do so by direct evidence of

discrimination, such as discriminatory statements or written notations. Hawkins v. Ceco

Corporation, 883 F.2d 977, 986 (11th Cir. 1989), *cert. denied*, 495 U.S. 935 (1990). In

the usual case, however, direct evidence of discriminatory intent is not available. A

plaintiff may then use the method established in McDonnell Douglas Corp. v. Green,

411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) to demonstrate discrimination.

Here, Plaintiff has not presented any "direct evidence," that is, evidence from

which no factual inferences must be drawn and which expresses discriminatory intent.

Browning v. President Riverboat Casino-Missouri, Inc., 139 F.3d 631, 635 (8th Cir.

1998) (evidence direct where no inference necessary); Nguyen v. City of Cleveland, 229

F.3d 559, 563 (6th Cir. 2000) (noting a facially discriminatory employment policy or express statement concerning persons in the protected group is direct evidence), *citing* Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 121, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985). The indirect method of proof as set in McDonnell Douglas, *supra*, applies in this case.

To establish a *prima facie* case, Plaintiff must show that he (1) belongs to a protected group; (2) was subjected to adverse job action; (3) the employer treated similarly situated employees outside his classification more favorably; and (4) he was qualified to do the job. McDonnell Douglas, 411 U.S. at 802, 93 S. Ct. at 1824, 36 L. Ed. 2d at 677, *cited in* Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997). When a *prima facie* case is made by the plaintiff, the burden of producing evidence shifts to the defendant to "articulate" or produce some evidence of a legitimate, nondiscriminatory reason for either terminating or not hiring the plaintiff. *Id.*; Texas Dept. of Community Affairs v. Burdine, 450 U.S. 257, 254-55, 101 S. Ct. 1089, 1094, 67 L. Ed. 2d 207 (1981). The burden of persuasion, which has always been upon the plaintiff, then requires plaintiff to prove that the reasons presented by the employer are pretextual and that intentional discrimination based upon an improper criterion was the motive. U. S. Postal Service Board of Governors v. Aikens, 460 U.S. 715, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983). To do so, a plaintiff must come forward with evidence "sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997), *citing* McDonnell Douglas, 411 U.S. at 804, 93 S. Ct. at 1825.

It is undisputed that Plaintiff is from Taiwan and, thus, is part of a "protected group."  It is also undisputed that he was not hired.  Accordingly, two of the four elements necessary to present a *prima facie* case have been shown:  that Plaintiff belongs to a protected group and was subjected to an adverse job action.  It must also be accepted as undisputed that FAMU treated similarly situated employees outside Plaintiff's classification more favorably in that a non-Taiwanese person was hired for the position.  This satisfies the third element.

Finally, it is now accepted that Plaintiff was qualified to do the job as Defendants do not dispute that fact.  Doc. 48, p. 10.  This was an issue raised *sua sponte* after review of the initial summary judgment materials, and the parties were ordered to address the question of whether Plaintiff was "qualified."  Doc. 62.

The issue arose because Dr. Jones said in a letter that Dr. Chi was not hired because the University issued a "directive" that tenure track appointments would no longer be made to "persons who are not U.S. citizens or permanent residents."  Doc. 62, p. 2, *citing* Plaintiff's Ex. 26 (doc. 60-4, p. 9).  The letter stated that because of that, "Dr. Chi's recommendation was revised and the appointment status changed 'from Tenure-Earning to Visiting' Professor."  Doc. 62, p. 2, *citing* Plaintiff's Ex. 26 (doc. 60-4, p. 9).  It was undisputed that Plaintiff was not a United States citizen.

As noted in my earlier order, this evidence suggested Plaintiff was not qualified for a tenure-track position and, thus, could not have been discriminated against if he was not "qualified."  Doc. 62, p. 2, *citing* Plaintiff's deposition, pp. 35, 36 (doc. 48-4, pp. 69-71).  However, Defendants' supplemental evidence did not contain the "directive" as ordered.  Indeed, in the supplemental memorandum, Defendants explain that they have

not been able "to locate any 'directive' issued by the University" which supports the statement of Dr. Jones in his letter to Dr. Greenleaf (concerning the salary of Dr. Chi) that a "directive" prohibited tenure track appointments to persons who are not United States citizens or permanent residents.  Doc. 71, pp. 2-4.  In light of the evidence that no such "directive" exists, and Defendants' suggestion in the memorandum that Dr. Jones was "mistaken" about the existence of such a directive or policy, *see* doc. 71, it is accepted that Plaintiff was qualified[13] to have been hired by FAMU in 2006, even though he did not have permanent residency status nor was he a United States citizen.[14]

Thus, Defendants' argument that Plaintiff has not shown a *prima facie case* of employment discrimination is not persuasive.  Plaintiff has met his burden and alleged circumstances giving rise to an inference of unlawful discrimination.  Therefore, the burden shifts to Defendants to produce evidence of a legitimate, nondiscriminatory reason for not hiring Plaintiff.

Defendants assert "there were at least two reasons for preferring Dr. Chi over Plaintiff; (1) she collaborated with her other faculty members better; and (2) had better English skills."  Doc. 48, p. 7.  Defendants contend that collaboration is not a

---

[13] Defendants also argued that Plaintiff had been employed the maximum time permissible for a Visiting Professor, four years.  Doc. 48, p. 2.  Despite that, Defendants never make the assertion that Plaintiff was not "qualified" to resume his employment. Yet, as noted previously in this report and recommendation, Defendants' supplemental evidence shows that an employee with an H-1B visa could fill a position "for a period of up to a maximum of six years."  Defendant's Supp. (Doc. 69-4, p. 1).  Even though Defendants had provided evidence that under the collective bargaining agreement, a visiting professor was purportedly limited to four years of employment, that may not be correct.  In any event, this does not appear to be a material dispute of fact.

[14] Plaintiff argues that the advertisements for the positions do not state a "requirement for permanent residency" either.  Doc. 72, p. 1.

discriminatory reason and that "English skills are obviously important to effective communication in teaching." *Id.*, at 8. Defendants have acknowledged that "Plaintiff had good qualifications," yet assert that Dr. Chi was ranked higher by the panel in both the 2005 and 2006 hiring decisions. Doc. 48, p. 6. Defendants note that the five person panel was composed of different faculty in 2005 and 2006, yet Plaintiff was not recommended for the positions. *Id.*, at 2, 6. Defendants deny that the hiring decision was motivated in any way by Plaintiff's national origin. Doc. 48, p. 6, *citing* to the Jones and Granville affidavits. Defendants also note that Plaintiff previously thought the decision to hire Dr. Chi instead of him was due to salary considerations. *Id.*, at 7.

Defendants put forth "at least two reasons for preferring Dr. Chi over Plaintiff; (1) she collaborated with her other faculty members better; and (2) had better English skills." Doc. 48, p. 7. Defendants argue that "English skills are obviously important to effective communication in teaching." *Id.*, at 8. Furthermore, while noting that Plaintiff quibbles over a word choice, Defendants point out that even Plaintiff acknowledges that Dr. Chi collaborated more than he. *Id.,* at 7-8.

Plaintiff does not dispute that Dr. Chi collaborated with more faculty than he did, and he makes much of the fact that Dr. Chi collaborated with Dr. Jones, suggesting that this was done to give her an advantage in the hiring process. Even *if* this collaboration effort gave Dr. Chi a political advantage over Plaintiff, it is not an unlawful advantage based upon Plaintiff's national origin. The degree to which a person collaborates with others in a university setting is a reasonable criterion for making a hiring decision in that setting. Further, Dr. Chi had produce more publications than Plaintiff, and Dr. Chi was a collaborator with another person in each publication. Research and publications are a

legitimate hiring considerations.  Plaintiff has not shown that these factors were

pretextual.

A more difficult issue is whether the stated reason that Dr. Chi had better English

skills has been shown by Plaintiff to be a pretext for discrimination.  A plaintiff "may not

establish that an employer's proffered reason is pretextual merely by questioning the

wisdom of the employer's reasons, at least not where . . . the reason is one that might

motivate a reasonable employer."  Alexander v. Fulton County, 207 F.3d 1303, 1339

(11th Cir. 2000), *quoted in* Brooks v. County Com'n of Jefferson County, Ala., 446 F.3d

1160, 1163 (11th Cir. 2006).  It is not for the Court to decide if the employer made a

wise business decision.  Combs v. Plantation Patterns, 106 F.3d 1519 (11th Cir. 1997).

Thus, a plaintiff may not claim that an employer's "proffered reason is pretextual merely

by questioning the wisdom of the employer's reason," at least where the reason

provided "is one that might motivate a reasonable employer."  *Id.* at 1543; *see also*

Springer v. Convergys Customer Management Group Inc., 509 F.3d 1344, 1350 (11th

Cir. 2007) (concluding that supervisor's view of the employee's qualifications is a

reasonable business decision).  Plaintiff must show that the decision to not hire him was

based on an impermissible, unlawful reason, that is, his national origin.  The issue is not

whether FAMU made the *right* decision as to whose communication skills were better.[15]

_____

[15] Defendants contend that Plaintiff's argument concerning English skills is "fatally
flawed."  Doc. 48, p. 8.  Plaintiff has a subjective belief that his English skills are better
than Dr. Chi's.  Defendant contends that if that were in fact true, then Dr. Chi would
have been rated lower than Plaintiff, not higher; and thus, Defendant asserts that
"Plaintiff's argument in this regard is fatally flawed."  *Id.*  This logic is strained.  If
Defendants believed Plaintiff's English skills were better than Dr. Chi's, but ranked Dr.
Chi higher than Plaintiff anyway, that would tend to show that the reason proffered now,
English skills, is a pretext for something else.  At any rate, it is not Plaintiff's view of his
own English abilities that matters, but whether this was a reasonable factor for the

Plaintiff argues that concern for his "pattern of speech" or "manner of speaking" is a form of national origin discrimination.  Doc. 61, p. 6; doc. 60, p. 5.  It is true that "[t]he EEOC recognizes linguistic discrimination as national origin discrimination and prohibits 'the denial of equal employment opportunity . . . because an individual has the . . . linguistic characteristics of a national group.' "  29 C.F.R. § 1606, *quoted in* Ang v. Procter & Gamble Co., 932 F.2d 540, 549 (6th Cir. 1991); *see, e.g.,* Rivera v. Baccarat, Inc., 10 F.Supp.2d 318, 324 (S.D.N.Y.1998).  "[D]iscrimination based on manner of speaking can be national origin discrimination."  Ang, 932 F.2d at 549, *citing to* Berke v. Ohio Dep't of Pub. Welfare, 628 F.2d 980, 981 (6th Cir. 1980).

However, "[t]here is nothing improper about an employer making an honest assessment of the oral communications skills of a candidate for a job when such skills are reasonably related to job performance."  Fragante v. City and County of Honolulu, 888 F.2d 591, 596-597 (9th Cir. 1989).  The important question is whether an individual's foreign accent or manner of speaking English "interferes materially with job performance."  Fragante, 888 F.2d at 596 (Filipino not chosen for clerk job because of "perceived deficiency in relevant oral communication skills cause bed his 'heavy Filipino accent' ").[16]  *E.g.*, Mejia v. New York Sheraton Hotel, 459 F.Supp. 375, 377 (S.D. N.Y. 1978) (Dominican national chambermaid was properly denied promotion to front desk because of her inability "to articulate clearly or coherently and to make herself

---

University to consider when making the employment decision.

[16] In Fragante, the court held that the plaintiff was not qualified for a job where his accent made him difficult to understand and the position required an "applicant to be able to communicate clearly and effectively."  888 F.2d at 595.

adequately understood in the English language."); <u>Meng v. Ipanema Shoe Corp.</u>, 73 F.Supp.2d 392, 399 (S.D. N.Y. 1999) (summary judgment granted to defendant that terminated Chinese customer service representative based on fact that "some of her customers had trouble understanding her"); <u>Thelusma v. New York City Bd. of Educ.</u>, 2006 U.S. Dist. LEXIS 64855, at *8-9 (E.D. N.Y. 2006) (court granted summary judgment to Defendant that terminated Haitian public school teacher even though Defendant recommended that Plaintiff take "accent reduction classes"); <u>Chang v. University of Toledo</u>, 480 F.Supp.2d 1009 (N.D. Ohio 2007) (finding Asian professor failed to present evidence of discrimination where offensive language was not used nor was his origin considered as a factor in his evaluation).

In this case, there is no evidence that any person made fun of Plaintiff's speech, mocked his manner of speaking, or used offensive language concerning his speech, accent, or nationality. *See* <u>Dunaway v. Int'l Bro. of Teamsters</u>, 310 F.3d 758, 765-766 (D.C. Cir. 2002) (finding use of derogatory national origin comments); <u>Manatt v. Bank of America</u>, 339 F.3d 792, 795-799 (9th Cir. 2003) (noting comments and jokes were made of plaintiff's Chinese ethnicity, and employees mocked her physical appearance). There is no evidence that any person involved in the selection process even considered Plaintiff's nationality.

The evidence shows only that Defendants thought that Plaintiff needed to work on his English skills. The comments were made to Plaintiff in the course of his annual evaluation, not in a public manner and not designed to ridicule Plaintiff. Teaching is the process by which one human imparts knowledge to others through communication.

Communication skills are absolutely essential for a teacher to perform the work of teaching.

Plaintiff disputes that Dr. Chi's communication abilities and her teaching skills are superior to his, but Plaintiff has not shown that Defendant's concerns are not valid, or that a "reasonable factfinder could find them unworthy of credence."  Springer v. Convergys Customer Management Group Inc., 509 F.3d 1344, 1348-1349 (11th Cir. 2007), citing Cooper v. Southern Co., 390 F.3d 695, 725 (11th Cir. 2004), cert. denied, 546 U.S. 960 (2005) (quoting Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997)).  Put another way, "a plaintiff cannot prove pretext by simply arguing or even by showing that he was better qualified than the [person] who received the position he coveted.  A plaintiff must show not merely that the defendant's employment decisions were mistaken but that they were in fact motivated by race."  Springer, 509 F.3d at 1349, quoting Brooks v. County Comm'n of Jefferson County, 446 F.3d 1160, 1163 (11th Cir. 2006), citing Alexander v. Fulton County, 207 F.3d 1303, 1339 (11th Cir. 2000).  There is evidence in this record to show Plaintiff has difficulty communicating, and was advised by the University to work on those skills.  There is evidence that Dr. Chi's English skills were evaluated and found to be satisfactory.  Plaintiff has not shown this concern to be untrue, or put forward to hide discrimination based upon his national origin.

Plaintiff has attempted to detract from the two expressed reasons of Defendant by arguing that the resumes provided by Defendants appear to be fabricated, that the search process was manipulated, that there were abnormalities in the search committee's activities and rankings of applicants, that Defendants were not truthful in

stating why no position was filled in 2005, and that Defendants belatedly point to Dr. Chi's research performance as a reason to not hire Plaintiff. Doc. 60, pp. 8-14. Those arguments do not advance Plaintiff's case as they do not point to the invalidity of the asserted reasons as to why Dr. Chi was chosen over Plaintiff, nor do they provide any evidence of discrimination. Plaintiff's arguments attempt to dispute immaterial facts which are not relevant to the overriding issue: are the reasons proffered by Defendants merely a pretext for discrimination?

Even accepting Plaintiff's argument that there exists a discrepancy in dates (that Jones made recommendations to the Dean four days before the Committee presented him with its recommendations), this is a dispute of immaterial fact. While it implies an irregularity in the intended procedure, it is not an irregularity pointing to discrimination against Plaintiff due to his national origin. Moreover, Plaintiff's suggestions that the selection process was ultimately not followed is incorrect, *see* doc. 51, p. 6, because the Department Chair did not substitute another candidate for the candidate chosen and recommended by the Committee. There is no evidence to suggest that Dr. Chi was *not* the candidate recommended by the Committee.

In summary, it would appear in this case that Defendants had a difficult decision to make. Both Chi and Plaintiff were qualified. Both had good records. Plaintiff has not shown that the reasons proffered for this difficult decision were pretextual. The decision was not based upon Plaintiff's national origin. Defendants' motion for summary judgment should be granted and judgment entered in favor of Defendant.

**RECOMMENDATION**

Accordingly, it is **RECOMMENDED** that Defendants' motion for summary judgment, doc. 48, be **GRANTED** and the Clerk be **DIRECTED** to enter judgment in favor of Defendants.

**IN CHAMBERS** at Tallahassee, Florida, on August 5, 2009.


 s/      William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**



## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**